UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE CONRATH,<br><br>    Plaintiff,<br><br>v.<br><br>S&T BANK,<br><br>    Defendant. | Case No. _____<br><br><br>JURY TRIAL DEMANDED |

# COMPLAINT

NOW COMES Plaintiff, Julie Conrath, by and through her attorney, Sean L. Ruppert., of Kraemer, Manes & Associates LLC, and files this complaint alleging as follows:

## I. Nature of the Action

1.  Plaintiff brings this action under the Americans with Disabilities Act ("ADA") 42 U.S.C §12101-12213, the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §§ 951-963 and the Family and Medical Leave Act ("FMLA"), 29 § U.S.C. 2601 *et. seq.*

## II. Jurisdiction and Venue

2.  This action arises under the Americans with Disabilities Act ("ADA") 42 U.S.C §12101-12213, and the Family and Medical Leave Act ("FMLA"), 29 § U.S.C. 2601 *et. seq.*

3.  This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4.  Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2017 under charge number 533-2017-01113. *See Exhibit 1*.

6. Plaintiff was mailed Notice of Right to Sue from the EEOC on January 30, 2018. The Complaint has been filed within ninety (90) days of the Plaintiff's receipt, this making this action timely. *See Exhibit 2*.

### III. Parties

7. Plaintiff, Julie Conrath ("Plaintiff"), is an adult individual who currently resides at 1434 Florence Avenue, Indiana, Pennsylvania 15701.

8. Defendant, S&T Bank ("Defendant") is a Pennsylvania financial institution headquartered at 800 Philadelphia Street, Indiana Pennsylvania 15701. The location where Plaintiff worked was 355 North 5th Street, Indiana, Pennsylvania 15701.

### IV. Facts

9. Plaintiff was hired by Defendant on or about July 16, 1986 and was most recently employed as a Commercial Loan Documenter.

10. In 2010, Plaintiff began experiencing various health issues, including but not limited to heart issues, migraines, and mini strokes.

11. Plaintiff had two (2) surgeries performed in the summer of 2015, for a rare breast tumor.

12. Plaintiff joined the Commercial Loan Department ("Department") as the most senior employee in said department.

13. In the Department, requests for day off work were granted based on seniority, therefore, Plaintiff's requests should have been granted over the other employees. However, this did not occur.

14. Michele L. Gonos, Vice President of the Department, continually denied Plaintiff's requests, despite Plaintiff consistently informing Ms. Gonos the nature and necessity of these requests.

15. Other employees, more junior than Plaintiff, had their requests granted.

16. A large portion of Plaintiff's requests were to attend doctors' appointments for her serious medical conditions.

17. Plaintiff always submitted the appropriate medical excuses and paperwork to Susan L. Rager-Parr, Vice President Financial Projects Manager.

18. Due to the severity of Plaintiff's medical conditions, her doctors' appointments had to be scheduled far in advance and any cancelations would be extremely difficult to reschedule, and detrimental to her health.

19. Plaintiff attempted to work with Ms. Gonos to find days she could request off for doctors' appointments, and despite the fact that Ms. Gonos offered to discuss any work schedule issues, she made it difficult for Plaintiff to find a suitable day off.

20. Ms. Gonos began assigning tasks to Plaintiff with a shorter time frame than was given to other employees. Plaintiff had attempted to work around these deadlines and asked to adjust her lunch schedule or work overtime to make up for any time missed for her doctor appointments.

21. On May 27, 2016, Plaintiff was attempting to work with Ms. Gonos to find suitable days in December of 2016 for doctors' appointments as the December calendar was not yet available, but Ms. Gonos informed her that there is nothing she can do to help her.

22. On August 8, 2016, Plaintiff reached out to George Basara, Executive Vice President General Counsel for advice. Mr. Basara offered to assist with a transfer to another department, although no such move occurred.

23. Plaintiff also spoke with Susan Nicholson, Human Resources, about a transfer to another department, however, no one followed up. Plaintiff continued to apply for available jobs in other departments.

24. In October of 2016, Plaintiff was offered three (3) months' severance or the option to retain her job but with altered shifts.

25. Plaintiff's current shift schedule allowed her husband, also an employee of Defendant, to drive her to and from work. Due to her medical conditions, her husband's ability to drive her to and from work eased her conditions.

26. In December of 2016, Plaintiff was diagnosed with a rare form of a breast tumor. This resulted in an additional surgery in an attempt to treat the tumor.

27. Plaintiff went on leave under the Family Medical Leave Act ("FMLA") on December 8, 2016 to have the required surgery.

28. On December 27, 2016 Plaintiff went into renal failure and was subsequently admitted to the hospital.

29. Plaintiff was discharged from the hospital on January 1, 2017.

30. Plaintiff returned to work on February 13, 2017 with restrictions from her oncology doctor.

31. Defendant granted all but one restriction. Specifically, Defendant did not allow Plaintiff to work from 7:30 a.m. to 4:00 p.m.

32. Plaintiff was re-admitted to the hospital on February 24, 2017 and was out on FMLA leave.

33. Plaintiff was discharged from the hospital two (2) weeks later and ordered by her primary care physician to work half days.

34. On February 14, 2017, after executing the "chain of command" for assistance and not receiving any help, Plaintiff executed the company "open door" policy and spoke with Todd Brice, President and Chief Executive Officer, about her situation and medical conditions.

35. Mr. Brice informed her that he would look into the situation and not to worry about her job. Plaintiff also spoke with David Ruddock, Chief Operating Officer, who inquired about her health status.

36. Following her discussions with Mr. Brice and Mr. Ruddock, Plaintiff later received a letter stating that if she discussed any HIPPA related issues with any of Defendant's employees, she would be immediately terminated.

37. Plaintiff was terminated April 25, 2017 because she could not work full-time.

38. Plaintiff was not permitted to temporarily work part-time until she was released by her physician to resume full-time hours.

39. Additionally, Plaintiff's husband, Donald Conrath, works for the Defendant.

40. While Mr. Conrath was meeting with Ann White, Defendant's Human Resources representative, Ms. White stated, "I can't really talk about it, but I can tell you this, she [Plaintiff] was terminated for her health issues."

41. Further, Mr. Conrath was told, "Don't talk about anything about this situation around the bank [Defendant], if you want to keep a working relationship with the bank [Defendant]."

## V. Causes of Action

### COUNT I

### Termination in Violation of the ADA and PHRA

42. The averments contained in the preceding paragraphs are incorporated herein as if set forth at length.

43. Defendant constitutes an "employer" within the meaning of the ADA and the PHRA.

44. Plaintiff was an employee with a disability within the meaning of the ADA and PHRA following her surgeries related to her medical conditions from May of 2016, at least through the date she was terminated.

45. Defendant was notified of, and fully aware of, Plaintiff's disability at all times relevant hereto.

46. Following Plaintiff's most recent hospital stay, she was ordered by her primary care physician to work half days.

47. On February 14, 2017, after executing the "chain of command" for assistance and not receiving any help, Plaintiff executed the company "open door" policy and spoke with Todd Brice, President and Chief Executive Officer, about her situation and medical conditions.

48. Mr. Brice informed her that he would look into the situation and not to worry about her job. Plaintiff also spoke with David Ruddock, Chief Operating Officer, who inquired about her health status.

49. Following her discussions with Mr. Brice and Mr. Ruddock, Plaintiff later received a letter stating that if she discussed any HIPPA related issues with any of Defendant's employees, she would be immediately terminated.

50. Plaintiff was terminated April 25, 2017 because she could not work full-time.

51. Plaintiff was not permitted to temporarily work part-time until she was released by her physician to resume full-time hours.

52. Defendant terminated Plaintiff, in whole or in part, because of her disability.

53. Plaintiff's unlawful termination is an adverse employment action.

54. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

55. Defendant's acts and omissions violated the ADA and PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against the Defendant, and award any and all available damages, including back pay, front pay, compensatory damages, punitive damages, attorney fees, court costs, pre-judgment and continuing interest, and any other such relief as the Court deems necessary and appropriate.

## COUNT II

### Failure to Accommodate in Violation of the ADA and PHRA

56. The averments contained in the preceding paragraphs are incorporated herein as if set forth at length.

57. Defendant constitutes an "employer" within the meaning of the ADA and PHRA.

58. Plaintiff was an employee with a disability within the meaning of the ADA and PHRA following her surgeries related to her medical conditions from May of 2016, at least through the date she was terminated.

59. Plaintiff was able to perform the essential functions of her job with Defendant with a reasonable accommodation in the form of reasonable leave while she was receiving medical care for, and recovering from, the surgery she underwent on December 8, 2016.

60. Despite providing supporting medical documentation to Defendant, Plaintiff was nonetheless unlawfully terminated, in whole or in part, because she missed a few days of work while receiving medical care for her surgery.

61. Defendant was fully aware of Plaintiff's disability following the discovery of a rare breast tumor in the summer of 2015, and yet Defendant still refused to provide any accommodations to Plaintiff.

62. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

63. Defendant's acts and omissions violated the ADA and PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for the Plaintiff, and against the Defendant for: loss of wages; front pay as deemed appropriate by the

court; compensatory damages; plaintiff's legal fees; pre-judgment and continuing interest; court costs; and any other such relief as the Court may deem just and proper.

## COUNT III

### Refusal to Accommodate in Violation of the ADA and PHRA

64. The averments contained in the preceding paragraphs are incorporated herein as if set forth at length.

65. Defendant constitutes an "employer" within the meaning of the ADA and PHRA.

66. Plaintiff was an employee with a disability within the meaning of the ADA and PHRA following her surgeries related to her medical conditions from May of 2016, at least through the date she was terminated.

67. Despite notifying Defendant of her surgery which occurred on December 8, 2016, and providing medical documentation to Defendant, Defendant nonetheless unlawfully failed to engage in the interactive process with Plaintiff to determine what reasonable and necessary accommodations she was entitled to.

68. In the Department, requests for day off work were granted based on seniority, therefore, Plaintiff's requests should have been granted over the other employees. However, this did not occur.

69. Michele L. Gonos, Vice President of the Department, continually denied Plaintiff's requests, despite Plaintiff consistently informing Ms. Gonos the nature and necessity of these requests.

70. Other employees, more junior than Plaintiff, had their requests granted.

71. A large portion of Plaintiff's requests were to attend doctors' appointments for her serious medical conditions.

72. Plaintiff always submitted the appropriate medical excuses and paperwork to Susan L. Rager-Parr, Vice President Financial Projects Manager.

73. Due to the severity of Plaintiff's medical conditions, her doctors' appointments had to be scheduled far in advance and any cancelations would be extremely difficult to reschedule, and detrimental to her health.

74. Plaintiff attempted to work with Ms. Gonos to find days she could request off for doctors' appointments, and despite the fact that Ms. Gonos offered to discuss any work schedule issues, she made it difficult for Plaintiff to find a suitable day off.

75. On May 27, 2016, Plaintiff was attempting to work with Ms. Gonos to find suitable days in December of 2016 for doctors' appointments as the December calendar was not yet available, but Ms. Gonos informed her that there is nothing she can do to help her.

76. On August 8, 2016, Plaintiff reached out to George Basara, Executive Vice President General Counsel for advice. Mr. Basara offered to assist with a transfer to another department, although no such move occurred.

77. Plaintiff also spoke with Susan Nicholson, Human Resources, about a transfer to another department, however, no one followed up. Plaintiff continued to apply for available jobs in other departments.

78. In October of 2016, Plaintiff was offered three (3) months' severance or the option to retain her job but with altered shifts.

79. On February 14, 2017, after executing the "chain of command" for assistance and not receiving any help, Plaintiff executed the company "open door" policy and spoke with Todd Brice, President and Chief Executive Officer, about her situation and medical conditions.

80. Mr. Brice informed her that he would look into the situation and not to worry about her job. Plaintiff also spoke with David Ruddock, Chief Operating Officer, who inquired about her health status.

81. Following her discussions with Mr. Brice and Mr. Ruddock, Plaintiff later received a letter stating that if she discussed any HIPPA related issues with any of Defendant's employees, she would be immediately terminated.

82. Plaintiff was terminated April 25, 2017 because she could not work full-time.

83. Plaintiff was not permitted to temporarily work part-time until she was released by her physician to resume full-time hours.

84. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

85. Defendant's acts and omissions constitute an illegal failure to engage in the interactive process, in violation of the ADA and PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for the Plaintiff, and against the Defendant for: loss of wages; front pay as deemed appropriate by the court; compensatory damages; plaintiff's legal fees; pre-judgment and continuing interest; court costs; and any other such relief as the Court may deem just and proper.

## COUNT IV

### Retaliation in Violation of the Family and Medical Leave Act

86. The averments contained in the preceding paragraphs are incorporated herein as if set forth at length.

87. Plaintiff worked for the Defendant for more than one year prior to her need for FMLA leave.

88. Plaintiff worked more than 1250 hours in the previous year prior to her need for FMLA leave arose.

89. The Defendant employs more than 50 persons within 75 miles of the location where Plaintiff worked.

90. In December of 2016, Plaintiff was diagnosed with a rare form of a breast tumor. This resulted in an additional surgery in an attempt to treat the tumor.

91. Plaintiff went on leave under the Family Medical Leave Act ("FMLA") on December 8, 2016 to have the required surgery.

92. On December 27, 2016 Plaintiff went into renal failure and was subsequently admitted to the hospital.

93. Plaintiff was discharged from the hospital on January 1, 2017.

94. Plaintiff returned to work on February 13, 2017 with restrictions from her oncology doctor.

95. Defendant granted all but one restriction. Specifically, Defendant did not allow Plaintiff to work from 7:30 a.m. to 4:00 p.m.

96. Plaintiff was re-admitted to the hospital on February 24, 2017 and was out on FMLA leave.

97. Plaintiff was discharged from the hospital two (2) weeks later and ordered by her primary care physician to work half days.

98. On February 14, 2017, after executing the "chain of command" for assistance and not receiving any help, Plaintiff executed the company "open door" policy and spoke with Todd Brice, President and Chief Executive Officer, about her situation and medical conditions.

99. Mr. Brice informed her that he would look into the situation and not to worry about her job. Plaintiff also spoke with David Ruddock, Chief Operating Officer, who inquired about her health status.

100. Following her discussions with Mr. Brice and Mr. Ruddock, Plaintiff later received a letter stating that if she discussed any HIPPA related issues with any of Defendant's employees, she would be immediately terminated.

101. Plaintiff was terminated April 25, 2017 because she could not work full-time.

102. Defendant unlawfully retaliated against Plaintiff for exercising her lawful right to FMLA-protected leave, including but not limited to by Defendant unlawfully terminating Plaintiff, in whole or in part, in retaliation for taking FMLA-protected leave from approximately December 8, 2016 through February 13, 2017.

103. Defendant terminated Plaintiff, in whole or in part, in retaliation for her exercising her lawful right to FMLA-protected leave, in violation of the FMLA.

104. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

105. Defendant's acts and omissions constitute illegal retaliation under the FMLA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for the Plaintiff, and against the Defendant for: loss of wages; front pay as deemed appropriate by the court; liquidated damages; plaintiff's legal fees; pre-judgment and continuing interest; court costs; and any other such relief as the Court may deem just and proper.

## COUNT V

### Interference in Violation of the Family and Medical Leave Act

106. The averments contained in the preceding paragraphs are incorporated herein as if set forth at length.

107. Plaintiff worked for the Defendant for more than one year prior to her need for FMLA leave.

108. Plaintiff worked more than 1250 hours in the previous year prior to her need for FMLA leave arose.

109. The Defendant employs more than 50 persons within 75 miles of the location where Plaintiff worked.

110. In the Department, requests for day off work were granted based on seniority, therefore, Plaintiff's requests should have been granted over the other employees. However, this did not occur.

111. Michele L. Gonos, Vice President of the Department, continually denied Plaintiff's requests, despite Plaintiff consistently informing Ms. Gonos the nature and necessity of these requests.

112. Other employees, more junior than Plaintiff, had their requests granted.

113. A large portion of Plaintiff's requests were to attend doctors' appointments for her serious medical conditions.

114. Plaintiff always submitted the appropriate medical excuses and paperwork to Susan L. Rager-Parr, Vice President Financial Projects Manager.

115. Due to the severity of Plaintiff's medical conditions, her doctors' appointments had to be scheduled far in advance and any cancelations would be extremely difficult to reschedule, and detrimental to her health.

116. Plaintiff attempted to work with Ms. Gonos to find days she could request off for doctors' appointments, and despite the fact that Ms. Gonos offered to discuss any work schedule issues, she made it difficult for Plaintiff to find a suitable day off.

117. On May 27, 2016, Plaintiff was attempting to work with Ms. Gonos to find suitable days in December of 2016 for doctors' appointments as the December calendar was not yet available, but Ms. Gonos informed her that there is nothing she can do to help her.

118. Plaintiff was terminated April 25, 2017 because she could not work full-time.

119. Plaintiff was not permitted to temporarily work part-time until she was released by her physician to resume full-time hours.

120. Defendant unlawfully interfered with, restrained, and denied the exercise and attempted exercise of Plaintiff's lawful right to FMLA-protected leave.

121. Defendant's acts and omissions illegitimately prevented Plaintiff from obtaining benefits she was entitled to under the FMLA.

122. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

123. Defendant's acts and omissions constitute illegal interference under the FMLA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants, and award Plaintiff lost wages, front pay as deemed appropriate by the court, liquidated damages, Plaintiff's legal fees, pre-judgment and continuing interest, court costs, and any other such relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Sean L. Ruppert
Sean L. Ruppert, Esq.
Pa. ID. No. 314380
**KRAEMER, MANES & ASSOCIATES, LLC**
U.S. Steel Tower
600 Grant Street, Suite 4875
Pittsburgh, PA 15219
412.626.5550 (p)
412.637.0237 (f)
sr@lawkm.com
*Attorney for Plaintiff*